UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

SHANE ERIC HANLEY,
        Petitioner,                        No. 2:14-cv-134
vs.                                               (Criminal Case No. 2:12-cr-26)
                                                     Hon R. Allan Edgar
UNITED STATES OF AMERICA,         United States District Judge
        Respondent.
_____/

## **OPINION AND ORDER**

       Petitioner, Shane Eric Hanley, currently confined at Federal Correctional Institute—Ashland, Kentucky, brings this Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, arguing that his trial counsel provided constitutionally ineffective assistance of counsel for three reasons: 1) counsel failed to challenge the search warrant or underlying affidavit supporting the search warrant or the evidence seized pursuant to that warrant; 2) counsel allowed him to be assessed by psychiatrists that worked for the government, giving the government an additional opportunity to interrogate him; and 3) that his retained and appointed counsel were unprepared to represent him in a trial, and as a result he was compelled to enter a guilty plea.

       Respondent United States of America opposes the § 2255 motion and argues that all Petitioner's claims should be denied without an evidentiary hearing. After reviewing the record, the Court concludes that the motion must be denied. The record conclusively shows that Petitioner's motion is without merit and he is not entitled to any relief under 28 U.S.C. § 2255. There is no need for an evidentiary hearing.

### **I. Standard of Review**

       28 U.S.C. § 2255 provides that a federal prisoner may make a motion to vacate, set aside, or correct a judgment of conviction or sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the federal district court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by federal law, or is otherwise subject to collateral attack. Petitioner bears the burden of establishing an error of federal constitutional magnitude that had a substantial and injurious

effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

As a threshold standard to relief, a § 2255 motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, Petitioner must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct appeal. *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506.

In the present case an evidentiary hearing is unnecessary because there are no genuine issues of material fact in dispute and the record conclusively shows that Petitioner is not entitled to any relief under § 2255. *Cope v. United States*, 272 Fed. Appx. 445, 451 (6th Cir. 2008). An evidentiary hearing is not required in a § 2255 proceeding where the petitioner's factual allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).

## II. Facts

On September 6, 2012, a federal grand jury indicted Petitioner on a two count indictment charging him with possession of images of minors engaged in sexually explicit conduct and

possession of child pornography. (R. 1: Indictment)[1] On February 20, 2013, Magistrate Judge Timothy P. Greeley conducted a status conference based on retained defense counsel Peter Samouris's request to withdraw representation of Petitioner because of a breakdown in the attorney-client privilege. (R. 19) Judge Greeley found that there was no breakdown in the attorney client relationship. (*Id.*; R. 61: Tr. of Status Conf. at PgID #766–71).  Judge Greeley also denied a request for adjournment of trial but appointed attorney Mark Dobias to assist Mr. Samouris. (R. 19; R. 22; R. 61, at PgID ## 763–64, 770)

On February 22, 2013, a change of plea hearing was conducted. (R. 24)  At this hearing, Judge Greeley asked Mr. Dobias to make a record of his involvement in assisting Petitioner:

> MR. DOBIAS:
> . . .
> Your Honor, I received a call yesterday confirming that I was appointed as I believe standby, but for all intents and purposes it would probably be counsel in this matter, court-appointed counsel. I obtained copies of all relevant reports and I reviewed those last night. Mr. Miller was kind enough to drop off his reports. Mr. Lochner provided me with some reports.
> Then this morning I went over to the U.S. Attorney's Office. I reviewed the forensic evidence which was provided to me by Mr. Lochner as well as the numerical evidence which is contained such as browsing history, hash marks, things like that, looked at that. I was also provided copies of that information for future reference if necessary.
> I reviewed the images; not all of them, but I sampled the images as far as what was involved here. We had a discussion as far as photographs and I was shown photographs of Mr. Hanley's house and what was seized as a result of the search warrant.
>  I then came to Marquette this morning, and at approximately 10:30 I met with Mr. Samouris . . . .
> . . . and also with Mr. Hanley in the jury room of the courthouse. The plea agreement, I reviewed the plea agreement with Mr. Hanley on my own independent basis to confirm that Mr. Hanley knew what was going on here, you know, and that I was satisfied that this is a free and voluntarily given plea.
> THE COURT: Did your review of the materials suggest to you that there were motions that should have been filed that weren't?
> MR. DOBIAS: Your Honor, I don't believe so. I looked at the search warrant, and to be candid, it was a very good search warrant. I looked at the investigation. There was nothing there that would invoke Fifth Amendment issues, no chain of evidentiary issues, things like that. So I'm satisfied as far as the materials that I have that I was given, and I believe that I were given all -- I was given all materials, you know. I'm satisfied.

---

[1] All cites to the Record come directly from the underlying criminal case, 2:12-cr-26, unless otherwise noted.

(R. 58: Change of Plea Tr. at PgID #733–35.) In Mr. Dobias's affidavit in the § 2255 case, he reaffirmed his efforts to verify Mr. Samouris's conclusions and advice, as well the steps he took to review the case:

> Prior to the entry of the guilty plea, I met with Assistant United States Attorney Paul Lochner on February 21, 2013. Mr. Lochner provided me with copies of reports pertaining to the case which were reviewed by me on the evening of February 21, 2013.
> On the morning of February 22, 2013, I reviewed the forensic evidence which was provided to me by Mr. Lochner at the United States Attorney's Office in Marquette [sic] Michigan. I was provided with an opportunity to review the digital evidence including but not limited to browsing history, hash marks and Forensic Toolkit® date.
> I reviewed the images which formed the basis of the criminal prosecution. Additionally, I was shown photographs of Mr. Hanley's home at the time that the search warrant was served.
> At 10:30 a.m., prior to the entry of the plea, I met with Mr. Samouris and Movant in the jury room on the courthouse. I reviewed the plea agreement with Mr. Hanley. Mr. Samouris was not present. The purpose of this independent review was to determine and to confirm that Mr. Hanley knew that he was giving a knowing, free, and voluntary plea and that he understood the components and terms of the plea agreement.
> I was satisfied that Movant understood the plea agreement and that his plea would be freely and voluntarily given.
> I also reviewed the materials provided by the United States Attorney to determine whether or not there were grounds for suppression of evidence. I was satisfied that the search warrant was unassailable.
> I then met with Movant and Mr. Samouris in the jury room and observed the interaction of Mr. Samouris and Movant. I did not observe any type of interaction which would lead me to conclude that Movant was pressured into a plea.
> At the time of the plea hearing, I set forth the above facts on the record. At pages 24-26 of the plea transcript (Document #58 filed August 22, 2014), I outlined on the record the steps I had taken in my representation of Movant.

(2:14-cv-134, R. 10: Mark L. Dobias Affidavit at PgID #34 (paragraph numbers omitted)).

At the plea hearing, Judge Greeley reviewed Petitioner's and Mr. Samouris's concerns about their attorney-client relationship. (R. 58: Change of Plea Tr. at PgID # 716.) Petitioner stated that "[m]e and my attorney, we have kind of ironed out our issues on these things." (*Id.*) Judge Greely then asked Petitioner a number of questions regarding the adequacy of his attorneys' representation of his interests:

4

> THE COURT: And you've had an opportunity to consult with both Mr. Samouris and Mr. Dobias, correct?
> DEFENDANT HANLEY: Yes, sir.
> THE COURT: Do you feel you've had an adequate time to talk with both of them about your case?
> DEFENDANT HANLEY: I believe so.
> THE COURT: Have they answered all your questions about the case?
> DEFENDANT HANLEY: Yes, sir.
> THE COURT: Are you satisfied with the representation you have received from both attorneys?
> DEFENDANT HANLEY: Yes, I am.

(*Id.* at 717.) Judge Greeley then asked Petitioner about the rights he would be giving up by his guilty plea, including: the right to plead not guilty; right to trial by jury with counsel; right to confront and cross-examine all witnesses; the right to compel attendance of his own witnesses; right to present his own evidence; the right not to be compelled or incriminate himself or testify; the right not to have his decision not to testify held against him; the absolute right to testify; the presumption of innocence and government's burden to prove each charge beyond a reasonable doubt. (*Id.* at 719–20) Petitioner affirmed that he understood he would be giving up each of these rights if he pleaded guilty. After discussing other matters with Petitioner, Judge Greeley again reiterated the rights he would be giving up:

> If you plead guilty, there will be no further trial of any kind. By pleading guilty you're waiving your right to a trial. By doing this you're waiving your right against self-incrimination, your right to trial by jury or by a judge, your right to confront and cross-examine the witnesses against you, your right to compel the attendance of your own witnesses to testify, your right to present evidence, and your right to testify. Do you understand this?

(*Id.* at 720.) To Judge Greeley's question, Petitioner answered unequivocally: "I do." (*Id.*)

Hanley pleaded guilty and went on to affirm that his plea was not the result of 1) force, threats, or promises besides those in the plea agreement; 2) that his decision to plea guilty was voluntary and a free-will act; 3) that he consulted with his attorneys regarding the plea agreement, had read the agreement, and all questions regarding the agreement were discussed and answered by his attorneys; 4) that he understood everything in the plea agreement and had no additional questions about it; 5) that there is nothing inaccurate in the plea agreement and that there is nothing in the plea agreement that he did not agree to. (*Id.* at 721–22.)

Assistant United States Attorney Paul Lochner read the pertinent terms of the plea agreement on the record. (*Id.* at 723–31.) This included a provision that Petitioner waived his

5

right to appeal and to file a collateral attack, subject to some ability to appeal objections used to determine the final guideline range, among others. (*Id.* at 728.) Again, the Court affirmed that Petitioner understood the plea agreement and that he was giving up the rights previously mentioned by his guilty plea. (*Id.* at 731–33.)

On June 18, 2013, Petitioner was sentenced to 188 months' incarceration, twenty years of supervised release, $17,769.00 in restitution, and a $100 special assessment, which was waived. (R. 44; 45.) Petitioner mailed his pro se § 2255 motion on June 13, 2014. This Court ordered the government to answer Petitioner's motion and later waived the attorney-client privilege with respect to Petitioner's claims. On October 8, 2014, Mr. Samouris and Mr. Dobias filed affidavits responding to Petitioner's allegations. The Petitioner has filed a reply and this matter is ready for a decision.

### III. Claim of Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the right to assistance of counsel for his defense. Ineffective counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004). *Strickland* establishes a two-part test for deciding claims of ineffective counsel. First, Petitioner must show that his attorney's performance was deficient. Second, Petitioner is required to demonstrate that the attorney's deficient performance caused him to suffer actual prejudice. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003).

The first prong of the *Strickland* test requires Petitioner to show that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003); *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986);

*Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason*, 320 F.3d at 616-17; *Wickline*, 319 F.3d at 819; *Skaggs v. Parker*, 235 F.3d 261, 268 (6th Cir. 2000); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to make a reasonable investigation under the circumstances or to make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Petitioner to show that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of Petitioner's counsel was so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen v. United States*, 131 Fed. Appx. 61, 63 (6th Cir. 2005); *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc). To satisfy the prejudice element, Petitioner must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason*, 320 F.3d at 617; *Wickline*, 319 F.3d at 819. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Petitioner argues that 1) counsel failed to challenge the affidavit used in the search warrant, the search warrant itself, and any evidence seized pursuant to that warrant; 2) counsel

allowed him to be assessed by psychiatrists that worked for the government, giving the government an additional opportunity to interrogate him; and 3) he was compelled to enter a guilty plea because his retained and appointed counsel were unprepared to represent him in a trial. This Court will address each of Petitioner's arguments in turn.

**i. Affidavit and Search Warrant**

Petitioner claims that the affidavit used in support of the search warrant was stale, that the search warrant was invalid, and that any evidence seized as a result of this stale affidavit should have been suppressed. Here, Petitioner fails to meet the first prong of *Strickland*. Two separate attorneys, one retained and another appointed, both came to the same conclusion with respect to the affidavit and search warrant: that there was no basis to challenge either.

During the change of plea colloquy, Mr. Dobias stated that the search warrant was "a very good search warrant" and Mr. Samouris explained that he did not want to file a motion just to file a motion. (R. 58: Change of Plea Tr. at PgID # 734, 736.) In Mr. Samouris's affidavit, he explained the detailed steps he took to review the affidavit and search warrant with Petitioner and concluded:

> In short, Defendant and Affiant together reviewed discovery that painstakingly detailed exactly how the government learned of Defendant's conduct, including not only all of the supporting facts related to the search warrant, but also, all of the substantive portions of the agent reports and all pretrial filings by the Government.

(2:14-cv-134, R. 11: Samouris Aff. at PgID # 38–40.) Mr. Dobias also clarified his review of the affidavit and search warrant on the record at the plea colloquy and in his affidavit. Mr. Dobias was "satisfied that the search warrant was unassailable" and that no basis for challenging either the affidavit or search warrant existed. (R. 58: Change of Plea Tr. at PgID # 734–35; 2:14-cv-134, R. 10: Dobias Aff. PgID # 34.)

Because two separate attorneys representing Petitioner both analyzed the affidavit and search warrant and determined that no legitimate attacks could be made on either this supports a conclusion that counsels' representation of Petitioner did not fall below an objection standard of reasonableness. Moreover, in Petitioner's reply he claims to have never "seen an affidavit that supports the search warrant." (2:14-cv-134, R. 15 at PgID# 65) He surmises that the affidavit was stale because no one wanted to show him the documents. Even if his attorneys did not show him the affidavit and search warrant, they independently reviewed the documents, determined

8

there was no basis to challenge them, and independently discussed this with Petitioner. Moreover, Petitioner had forty-two minutes during the change of plea hearing to address his concerns and questions with Judge Greeley; he failed to do so. With respect to this claim the Court must deny Petitioner's claim.

**ii. Psychological Analysis**

Petitioner claims that Mr. Samouris was ineffective because he allowed psychiatrists working for the government to assess him. Petitioner believes that this assessment was another opportunity for the government to interrogate him. As a condition of Petitioner's pretrial release, Judge Greeley ordered that he may undergo "medical or mental health assessment, treatment and/or counseling as directed by the Pretrial Services Officer." (R. 6: Bond and Order at PgID#13.) It is true that the federal government pays for the Pretrial Services Officer and medical staff assessing Petitioner, but they are not paid by nor do they report to the United States Attorney's Office. Those individuals are an indispensable arm of the Court and are used assisting the Court and in preparing a Presentence Investigation Report (PRS). Interestingly, the PSR notes that Petitioner met with the mental health care provider weekly and the sessions were positive. (R. 34: Final Presentence Report at PgID # 101.)

Although Mr. Samouris may have been able to object or otherwise request different conditions of pretrial release, they could not have been based on a concern that the mental health assessment would be used by the Government as another opportunity to interrogate him. The Government was unable to use any information from these assessments prior to submission of the Initial PSR, which was filed on May 6, 2013. (R. 30: Initial Presentence Report). Moreover, the information contained within the PSR related to Petitioner's assessment would not have provided any help to the Governments already established case. Finally, and perhaps most important, is that Petitioner does not allege any prejudice to his case as a result of the psychological assessment. Accordingly, this claim does not entitle Petitioner to relief.

**iii. Defense Counsels' Preparation for Trial**

Petitioner also alleges that both Mr. Samouris and Mr. Dobias were not prepared for trial and he had no other alternative but to plead guilty. In contrast to Petitioner's assertion, at the status conference held on February 20, 2013, Mr. Samouris stated he was prepared to take the case to trial but had some disagreement with Petitioner regarding strategy. Mr. Samouris statements on the record and in his affidavit support the conclusion that Mr. Samouris was

prepared to take this case to trial and present a defense: "Affiant certainly advised Defendant that the Government had a very thorough case, but Affiant also advised Defendant that he was disappointed in that he was not able to negotiate something better for him, and the he fully understood if Defendant wanted to take the matter to trial." (2:14-cv-134, R. 11 at PgID# 40) The affidavit also includes Mr. Samouris's attempts to explore possible defenses, including talking with a computer expert and explaining to Petitioner the problems associated with attempting to counter the forensic evidence. (2:14-cv-134, R. 12 at PgID# 54–55.) Petitioner also wanted to call character witnesses, but Mr. Samouris explained the problem of his two prior sexual assault convictions (of minors) being introduced as a result of putting Petitioner's character at issue. (*Id.* at 55.) Nonetheless, Mr. Samouris appeared ready to mount a defense.

  Mr. Dobias's on-the-record statements and affidavit support an ability to try this case, or at the least provide significant support to Mr. Samouris in a trial. Prior to the change of plea hearing, Mr. Dobias reviewed all the investigative reports, images, and computer forensic examination reports, and talked with Petitioner without Mr. Samouris present to "determine and to confirm that Mr. Hanley knew that he was giving a knowing, free and voluntary plea and that he understood the components and terms of the plea agreement." (2:14-cv-134, R. 10 at PgID# 34.) Mr. Dobias was satisfied that the search warrant was "unassailable" and that Petitioner understood the plea agreement and that his plea would be given freely and voluntarily. (*Id.*) Mr. Dobias did not believe that Petitioner had "any available and meaningful defenses to his case in light of the overwhelming evidence against him." (*Id.* at 35.) Mr. Dobias summed up his response to Petitioner's allegations:

> As for the allegations against Mr. Samouris pressuring Movant into entering a plea, aside from Movant's general and expected unhappiness with his predicament, I did not see any conduct on the part of Mr. Samouris which would lead me to believe that Movant was pressured into the entry of a plea.

(*Id.*) Prior to the claims of ineffective assistance of counsel, Mr. Samouris clearly stated that he was prepared to try this case. Additionally, Mr. Dobias stated that he reviewed all of the relevant evidence and reports that would be used against Petitioner. At the time of the hearing, on February 22, 2013, Mr. Dobias would have had ten additional days to help Mr. Samouris mount a defense.

Petitioner's allegation of ineffective assistance of counsel is contrary to the record because his attorneys stated that they were prepared for trial. As Judge Greeley aptly stated at the status conference:

> You may not like the advice you're getting from the attorney, but he can't change the facts, and the law is what the law is. I have faced this situation in the past where defendants don't like what they're being told by the attorney. It's not because the attorney's not a good attorney. It's because the attorney's advising the client on what the law is and what the facts are. He can't change either one of those things.

(R. 61: Status Conf. Tr. at PgID# 763.) Petitioner has not demonstrated that his counsels' assistance fell below an objectively reasonable standard. In fact, it appears that both attorneys independently investigated the same evidence and came to the same conclusion. This leads to the inevitable conclusion that Petitioner was not provided constitutionally ineffective assistance of counsel. And, because Petitioner was not given ineffective assistance of counsel and his counsels were prepared for trial, Petitioner did not involuntarily waive his rights. Petitioner had ample opportunity before, during, and within fourteen days after his change of plea hearing to challenge his plea and make known his concerns—he did not.

## CONCLUSION

In summary, the Court finds that Petitioner's claims are without merit and will dismiss the petition with prejudice. In addition, if petitioner should choose to appeal this action, the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. Aug. 27, 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 529 U.S. at 484. The Court concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. This Court **DENIES** Petitioner a certificate of appealability as to each of the issues presented in this petition.

For the same reasons that the Court has dismissed this action, the Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal by petitioner from the Court's decision and judgment would be frivolous and not taken in good faith.  Therefore, any application by Petitioner for leave to proceed in forma pauperis on appeal is hereby **DENIED**.

Petitioner's for post-conviction relief pursuant to 28 U.S.C. § 2255 (Docket #1) is **DENIED AND DISMISSED WITH PREJUDICE**.  A judgment consistent with this Opinion and Order will be entered.

**SO ORDERED.**

Dated:      2/09/2015                             */s/ R. Allan Edgar*
                                                  R. Allan Edgar
                                                  United States District Court Judge